12 So.2d 332

## STATE ex rel. MANTELL v. BAUMHAUER et al.

### 1 Div. 416.

Court of Appeals of Alabama.
Oct. 27, 1942.

Rehearing Denied Jan. 19, 1943.

M. F. Dozier, Winston F. Groom, and Dan T. McCall, all of Mobile,· and C. L. Hybart, of Monroeville, for appellant.

Harry Seale, of Mobile, for appellees.

PER CURIAM.

Petition for mandamus to compel payment of the salary of relator, as a fireman of the City of Mobile, allegedly due by an Act of the Legislature, hereinafter mentioned. From a judgment below, awarding relator a portion of the amount claimed, both parties appeal.

Relator was continuously employed by the City of Mobile as a fireman from November 1, 1927, up to and including June 1, 1941. The hereafter cited Act of the Legislature fixed the salary of such firemen as relator at $1,440 per annum, payable in 24 equal installments out of the general fund of the City. The relator was never at any time paid this full statutory salary and instituted this proceeding in the court below to recover the difference in that salary and the sum received.

The Act became effective June 22, 1931. In October, 1932, and from time to time thereafter the salary of relator and other firemen was fixed by ordinances of the municipality. During all these years, relator accepted, without protest, this reduced salary.

It is disclosed by the pleadings and evidence that during the national financial crisis—the depression—the City of Mobile was in serious financial straits and was faced with either discharging some firemen or of effecting a further general scale reduction in the pay of those employed, including relator. Faced with such a contingency, the City, rather than discharging any employee, reduced the pay of all. This same situation prevailed in the other departments of the City.

The tendency of the evidence adduced for the City is that the firemen, at a meeting of whom Mantell (the relator) was present, agreed to this reduction in salary —in fact requested this solution of the difficulty in the face of the alternative of the discharge of some employees to preserve the pay scale (not then as high as that stipulated in the Act) of the others remaining.

The relator contends that at this meeting of the employees of the fire department, called for the purpose of deciding the question, no final vote was ever taken, but for

purposes here pertinent, this controversy is immaterial. The fact is apparent that the relator was acquainted with the City's—and in fact his and the others'—plight and accepted then and thereafter the pay accorded him by the City.

The respondents plead as defenses waiver, estoppel, the statute of limitations of one, two, three and six years, and nonliability of the City under Section 226 of the State Constitution. They also contended that under no version of the case could the salary fixing statute have application after the effectiveness of the Civil Service Act of Mobile County, found in Local Acts, 1939, page 298.

The contention of relator—presented in illuminating briefs and argument by able and astute counsel—is that none of these defenses are available. Much of the argument turns upon the primary issue as to whether or not a fireman is such officer as that he cannot waive—or, under the facts, be estopped from recovering—the statutory salary stipulated in the Act of the Legislature.

The judges of this court were variant in their views on the several controlling questions and could not reach an unanimous conclusion. In view of the novelty and importance of the litigation and the points involved therein, we deemed it proper and necessary to certify these questions to the Supreme Court for decision. Code 1940, Title 13, Section 88.

The following inquiry was, accordingly, addressed to the Supreme Court:

"To the Supreme Court of Alabama: * * *

## II

"Right of recovery in the * * * case hereinabove is claimed under Act No. 441, General Acts, Regular Session 1931, pages 538 and 539, wherein the salary of firemen is fixed at $1440.00 per annum. The City of Mobile (the city affected by the Act) at no time paid its firemen the salary therein stipulated, but from time to time, since the effective date of such Act, adopted ordinances prescribing their scale of pay. Petitioner is one such fireman and sues for recovery of the difference in the compensation received and that stipulated in the Act above.

"The judges of this court are unable to reach an unanimous conclusion in the case, and the abstract question of relator's right vel non of recovery is certified to your court for answer (Code 1940, Title 13, Section 88).

"Under this primary query, answer to the following questions will control the issue:

"(a) Is a fireman of the City of Mobile such public officer or employee within the contemplation of the rule that renders void his contract or agreement whereby he agrees to perform services required of him for less compensation than that fixed in the statute?

"(b) May a fireman of said City waive the payment of salary stipulated and accept a lesser amount so as to preclude a later recovery of the statutory compensation?

"(c) Does the acceptance by a fireman of said City, over a long period of time, of less compensation than that fixed by statute estop him from later claiming the amount stipulated in the Act?

"(d) Does the rule which avoids the agreement of a public officer to accept less than the compensation attached by law to his office apply to a fireman of the City of Mobile, whose tenure of employment is subject to the will of the governing body of that City?

"(e) May a fireman of said City be estopped from claiming a larger amount of salary after having accepted a lesser amount under an express agreement, upon which agreement the City relied to its detriment?

"(f) Is relator required to file the statutory claims as a condition of recovery (Section 476, Title 37, Code 1940)?

"(g) What is the proper limitation of action in cases of this kind?

"(h) Where the City has been unable to pay the salaries required by statute, and the deficit is carried over beyond the year in which the payment was supposed to have been made, is the claim for the deficit void under Section 226 of the Alabama Constitution, where the City is over its Constitutional debt limitation?

"(i) Does the local Civil Service Law applicable to Mobile County (Local Acts 1939, page 298) supersede the Acts of 1931 with respect to the fixing of the salaries of firemen?

"This certification is under the authority of Code 1940, Title 13, Sections 87 and 88.

"For your convenience the transcripts and briefs are herewith submitted."

Responding to the foregoing certification, the Supreme Court has tendered the hereafter quoted opinion in reply:

"Your * * * inquiry is divided into sub-sections, and each will be treated as there set forth. It relates to Act No. 441, General Acts (Regular Session) 1931, page 538 (see, Code of 1940, Title 62, section 460), which became a law under section 125, Constitution, on July 22, 1931, and provides that the city controlled by it 'shall appoint the necessary number of firemen who have had as much as one year's experience as firemen at a salary of $1440.00 per annum. * * * (They) shall hold office at the will of such city governing body,' and shall be paid out of the general fund of the city.

"An answer to the several features of your * * * inquiry involves a discussion of principles of law which we will undertake before answering each separately.

■ "When there is no question but that the position held by one was a public office and no contention that it was merely a public employment, we have held that having performed the official service, he is entitled to the compensation provided by law though he had agreed to take less, and though he accepted less in full satisfaction of his claim. Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231(28); Jeffers v. Wharton, 240 Ala. 21, 197 So. 358; Hamilton v. Edmundson, 235 Ala. 97, 177 So. 743. See, Robertson v. Robinson, 65 Ala. 610, 39 Am.Rep. 17; Crutcher v. Johnson County, Tex.Civ.App., 79 S.W.2d 932; Altenberg v. City of Superior, 228 Wis. 372, 280 N.W. 342, 118 A.L.R. 1458.

"The fact that the tenure of office is not fixed by law, but is subject to the will of the judge who appoints him does not seem to be controlling in respect to this question, as demonstrated in Jeffers v. Wharton, supra. The officer there in question was the clerk of an inferior court of Ensley, appointed by the judge and holding office at his will.

■ "The reason for the rule in Robertson v. Robinson, supra, is said to be that it 'concerns a place of public trust, in which the public have high interests, involving the performance of public works.' And in Montgomery v. State, 107 Ala. 372, 381, 18 So. 157, 159, it is said that an 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office * * *. [Such power is] a portion belonging sometimes to one of the three great departments, and sometimes to another. Still, it is a legal power, which may be rightfully exercised, and, in its effects, will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An employment, merely, has none of these distinguishing features.' See, Lacy v. State, 13 Ala.App. 212, 226, 227, 68 So. 706.

■ "And in Harrington v. State, 200 Ala. 480, 76 So. 422, 423, it is pointed out that 'when we speak of a public officer as a state, county, or municipal officer, we usually mean a person who, by lawful authority, has been invested with a part of the sovereign functions of government.' And that sometimes a person so invested has become an officer of a board or institution rather than of the State, so as to be unaffected by section 281, Constitution, —citing State v. Sanders, 187 Ala. 79, 65 So. 378, L.R.A. 1915A, 295. See, also, Hard v. State ex rel. Baker, 228 Ala. 517, 154 So. 77.

"We have often been concerned with the elements of a public office in respect to decreasing or increasing his salary under section 281, Constitution. See, Funderburk v. Oliver, 224 Ala. 301, 140 So. 370; Yielding v. McCombs, 238 Ala. 635, 193 So. 169.

"And the application of the impeachment features of the Constitution (section 175). See, Cooper v. State, 226 Ala. 288 (7), 147 So. 432; Touart v. State, 173 Ala. 453, 56 So. 211; Bradford v. State, 226 Ala. 342, 147 So. 182; Williams v. State, 197 Ala. 40, 72 So. 330, Ann.Cas. 1918D, 869.

■ "It has also been held that a fireman is not an 'officer' under sections 97 and 98, Constitution, prohibiting payment of an officer's salary after his death and retirement of an officer on pay, since he is not vested with a part of the sovereignty of the State. Cobbs v. Home Ins. Co., 18 Ala.App. 206, 91 So. 627, certiorari denied 207 Ala. 712, 91 So. 922.

"The question has also received consideration under other aspects of the law. See, Scruggs v. State, 111 Ala. 60, 20 So. 642.

"Our problem is not strictly one of whether the person in question is an officer as defined by some of the cases for certain purposes, but whether a fireman of a city fills a place of public trust, involving a performance of public duties which are a part of the sovereignty of the State or city. It is such a person who is prohibited by our public policy to trade and traffic in and about the compensation fixed by law.

"A fire department, when organized and functioning, is performing a governmental rather than a proprietary function. Long v. City of Birmingham, 161 Ala. 427, 49 So. 881, 18 Ann.Cas. 507. But there is no legislative duty on the party of a city to maintain one. It is a right permitted by law. Code of 1940, Title 37, section 450.

"There is no law which creates an office or an employment nor prescribes any duties of a fireman nor of a city in respect to a fire department. The Act here applicable to Mobile does neither. It leaves the whole matter of fire protection to the city, including the number of firemen and their term of service. Under Code of 1940, Title 37, section 407, a city may provide for a chief of the fire department. We are not here dealing with a chief thus authorized nor the nature of his duties.

"The duties of a fireman are of an important public sort, but there is vested in such service no element of trusteeship possessing an ingredient of sovereignty. He handles no public funds, and discharges no duty which sovereignty is bound by law to discharge. He is not a public officer as ordinarily defined. 42 Amer.Jur. 882, section 4.

"We are called upon to declare a principle of public policy which would prohibit the city and firemen from agreeing in time of financial stress to a reduction in salary for the future from that fixed by the Act rather than to have a reduction in the number of firemen. It was in the power and discretion of the city to reduce the number. The city may have been unable to pay to the existing number the salary prescribed. The statute in question could not force the city to exceed the debt limit of the Constitution. Section 225. The budget had to be balanced or the city may have been faced with expenses in excess of its current income which would create a debt in violation of sections 225 and 226. So that if the firemen agreed to a reduction in salary for future services so as to balance the budget, rather than to face a reduction in their number, they were exercising a right which we do not think violated any public policy, and was based on sufficient consideration. And if without having previously made such express agreement, they accepted less compensation than that prescribed by the Act in full settlement of their salary, and on the basis of that fact the city acted in making its budget and financial set up, or in creating, or in paying other expenses, all of which, including the amounts in question, would exceed current revenue, the principle of estoppel would have application. They could not be estopped, of course, unless they could agree. And a mere waiver of the balance due after performance of the service without consideration or the elements of estoppel, would be ineffectual. Hamilton v. Edmundson, supra. But an agreement for future services on a reduced scale of compensation when faced with an economic depression which the city decided necessitated a reduction in the expense of the fire department would not be without consideration.

"This question has been discussed in many cases. Some of them agree with our views and some take the position that it is against public policy for any public employee under any circumstances to be bound by an agreement for the reduction of his salary fixed by law.

"The case of Altenberg v. Superior, 228 Wis. 272, 280 N.W. 342, 118 A.L.R. 1452, discusses the question in a way consistent with what we have here said. The notes beginning on page 1458 of 118 A.L.R., give the majority view apparently as placing all public employees on the same footing as public officers, regardless of the nature of the service. But there are many cases which agree with us as shown by those notes.

"If we are correct in the foregoing discussion, it follows that to inquiry 2-a we answer No.

"To 2-b we answer Yes, if on a valuable consideration.

"To 2-c we answer Yes, if the usual incidents of an estoppel exist.

"To 2-d we answer No.

"To 2-e we answer Yes.

"To 2-f we answer No. See, State ex rel. City of Mobile v. Board of

Revenue & Road Com'rs, 180 Ala. 514, at page 519, 61 So. 814, and cases cited. This is the same requirement as applies to counties under Title 12, section 118, Code of 1940, except in respects not here material.

◼ "To 2-g we answer: We do not seem to have a statute directly in point. But we think the liability of the city if it exists is in the nature of a simple promise to pay implied by law (since it is so required). It is therefore controlled by the six year statute,—see, Mutual B. & L. Ass'n v. Watson, 226 Ala. 526, 147 So. 817, —and that applies to each monthly claim separately.

◼ "To 2-h: We made the following observation with reference to the counties which had incurred debts in amount equal to the limit fixed by the Constitution, 'that the obligations absolutely fixed by law are preferred claims; and that all voluntary obligations assumed or incurred after the exhaustion of the full amount of revenues on hand or in valid expectancy are debts which are repugnant to the Constitution, and are therefore invalid as to their payment.' Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, 163.

"The same principle we think has application to a city which is indebted up to its constitutional limit.

"We stated in Abrasley v. Jefferson County, 241 Ala. 660, 4 So.2d 153 (11), in substance, that an obligation imposed by law, and therefore involuntary, is a debt within the meaning of the Constitution, and cannot be so imposed in violation of its limitations. But we have not said that if such an obligation is imposed by law and made a current expense, having priority, and that current funds are improperly used in paying obligations voluntarily assumed, which are of a secondary sort, with none remaining to pay such preferred claims, that the preferred claims may not be voluntarily paid out of current operations of a succeeding year having sufficient funds for that purpose, not otherwise appropriated.

"We do not understand that your inquiry 2-h relates to that situation, and that it is necessary therefore at this time to declare what would be the status of such unpaid preferred claim, for the reason, as we understand your inquiry, it relates to the salaries of the city firemen, and while those salaries may be fixed by statute, the number of firemen to be thus compensated is not thus fixed by statute, but is left to the discretion of the city.

◼ "We think, therefore, that when the city fixed the number of firemen necessary in its discretion, the obligation to pay an amount equivalent to their combined salary fixed by law is a voluntary obligation within the contemplation of the principle above mentioned, and not one made preferred because it is absolutely fixed by law. It therefore falls in the status of a voluntary obligation within the quotation we made above from Brown v. Gay-Padgett Hardware Co., and a deficit which is carried over into the next year becomes a debt within the contemplation of the constitutional limitation, and if thereby the total indebtedness of the city is exceeded, it is invalid.

"With this explanation to the inquiry, we answer Yes.

"To 2-i we answer that although section XI of the Local Civil Service Act of Mobile County does not authorize a rate of compensation inconsistent with such rate as may be otherwise in specific instances fixed by law (Local Acts of 1939 [September 15, 1939] page 298, section XI), the Court of Appeals held in Stone v. State ex rel. O'-Connor, 8 So.2d 210,[1] that for reasons there stated, the Civil Service Act, supra, took precedence over a former local act fixing the annual salary of the assistant clerk of the Civil Division of the Circuit Court at $2400.00, and that the Personnel Board had the power under its broad terms to provide for an increase in the compensation of such assistant clerk. See, also, Stone v. State ex rel. Goetz, Ala.App., 8 So.2d 208.[2] This holding is consistent with Bates v. State ex rel. Conniff, 240 Ala. 609, 200 So. 779, and has direct application here. We see no reason to give a different interpretation to the Civil Service Act.

◼ "To this inquiry, therefore, we answer that for the purpose of fixing the compensation of firemen, the Act of 1931, supra, should not be considered as controlling over the Civil Service Act, supra."

◼ It results from the foregoing holding of our Supreme Court (binding upon us, Code 1940, Title 13, Section 95) that the relator is due no recovery in the case.

---

[1] 30 Ala.App. 500.

[2] 30 Ala.App. 489.

The judgment of the lower court is therefore reversed and one is here rendered in favor of the respondents.

Reversed and rendered.

## On Rehearing.

On page 167 of the transcript appears the following resolution, which was duly adopted by the City of Mobile on September 21, 1937:

"Whereas, on August 7th 1937, the Board of Commissioners of the City of Mobile adopted a resolution wherein it was provided 'that in the preparation of the budget to cover the operation of the said city for the fiscal year beginning October 1st, 1937, provision be made for an increase in the wages of the deserving employees of the City to the fullest extent that the estimated revenue will allow, and that such increase be given precedence over other increases in operative costs'; and,

"Whereas, from a careful study of the present financial condition of the City of Mobile it is found that by virtue of the economical and business-like administration of the said City and by reason of the refunding of the City's debt at a saving of $300,000.00 annually, the City is now in a position to restore in full the salaries of the City's employees:

"Now Therefore, Be it resolved by the Board of Commissioners of the City of Mobile that effective October 1st, 1937, *the salaries or wages of all employees be restored to the scale in effect during the month of December, 1931.*" (Italics supplied).

Relator contends that the words, "scale in effect during the month of December, 1931", should be construed to mean the salary of $120 as fixed under the statute. The lower court took this view and accordingly rendered judgment for the difference in that sum and the amount paid, from the date of the resolution until the effectiveness of the local Civil Service Act.

Regardless of this interpretation of the resolution, it seems to us that recovery would be precluded under the foregoing decision of our Supreme Court. 12 So.2d 326. Resort to the record will disclose that relator is estopped to now successfully assert his claim under the terms of the opinion, supra, of Mr. Justice Foster.

But reasoned a different way, it seems to us that this contention of the relator can-not be sustained. During December, 1931, relator was receiving compensation at the rate of $105 per month. This was his salary scale in effect then. After the salary restoring resolution of September, 1937, he was paid the increased salary of $105 per month. Thus were the dictates of the resolution carried out.

We have given careful consideration to the case, with special inquiry upon the question last hereinabove treated, and must and do conclude that no recovery is due in the case under the decision of our Supreme Court. By this we are bound.

Rehearing denied.

